NEBRASKA *v.* WYOMING ET AL.

No. 108, Orig. Decided June 11, 1945, April 20, 1993, and May 30, 1995—
Decree entered October 8, 1945—Order modifying and supplementing
decree entered June 15, 1953—Decree entered November 13, 2001

The Final Report of the Special Master is received and ordered filed.

## DECREE

This cause, having come to be heard on the Final Report of the Special Master appointed by the Court, IT IS HEREBY ORDERED THAT:

1. The Final Settlement Stipulation executed by all of the parties to this case and presented to the Special Master on March 15, 2001, is approved;

2. The proposed Modified Decree submitted as the Appendix to the Final Settlement Stipulation is entered, replacing the decree originally entered in this case on October 8, 1945, as modified on June 15, 1953;

3. All claims, counterclaims, and cross-claims brought in this case are hereby dismissed with prejudice; and

4. The parties shall share in the cost of this litigation in the manner that this Court shall order following the entry of the Modified Decree.

## APPENDIX

### Modified North Platte Decree

[Entered on October 8, 1945, *Nebraska* v. *Wyoming,* 325 U. S. 589, 665, modified and supplemented on June 15, 1953,

*Nebraska* v. *Wyoming,* 345 U. S. 981, and further modified November 13, 2001, *Nebraska* v. *Wyoming, supra,* p. 40.]

This Court equitably apportioned the North Platte River among the States of Colorado, Wyoming, and Nebraska in 1945. *Nebraska* v. *Wyoming,* 325 U. S. 589, 665 (1945). The Decree was amended pursuant to a stipulation and joint motion of the parties in 1953. *Nebraska* v. *Wyoming,* 345 U. S. 981. In 1986, the State of Nebraska filed suit against the State of Wyoming. In 1987, Wyoming filed counter-claims against Nebraska. This Court resolved certain issues on cross-motions for summary judgment in 1993. *Nebraska* v. *Wyoming,* 507 U. S. 584. In 1995, this Court granted in part and denied in part Nebraska's motion to amend its petition, and granted in part and denied in part Wyoming's motion to amend its counterclaims and to file cross-claims against the United States. *Nebraska* v. *Wyoming,* 515 U. S. 1. The parties have agreed upon this Court's entry of this Modified Decree to a dismissal with prejudice of all claims, counterclaims, and cross-claims for which leave to file was or could have been sought in this case.

The parties to this cause having filed a Final Settlement Stipulation dated March 13, 2001, which includes the parties' agreement to create the North Platte Decree Committee to assist them in monitoring, administering, and implementing this Modified Decree, and a Joint Motion for Approval of Stipulation, Modification of Decree, and Dismissal with Prejudice, and the Court being fully advised:

IT IS ORDERED:

That the Final Settlement Stipulation dated March 13, 2001, is hereby approved and adopted;

That all claims, counterclaims, and cross-claims for which leave to file was or could have been sought in this case are hereby dismissed with prejudice; and

That the Decree of October 8, 1945, as amended on June 15, 1953, is hereby modified as follows:

I. The State of Colorado, its officers, attorneys, agents, and employees, be and they are hereby severally enjoined:

(a) From diverting or permitting the diversion of water from the North Platte River and its tributaries for the irrigation of more than a total of 145,000 acres of land in Jackson County, Colorado, during any one irrigation season;

(b) From storing or permitting the storage of more than a total amount of 17,000 acre-feet of water for irrigation purposes from the North Platte River and its tributaries in Jackson County, Colorado, between October 1 of any year and September 30 of the following year;

(c) From exporting out of the basin of the North Platte River and its tributaries in Jackson County, Colorado, to any other stream basin or basins more than 60,000 acre-feet of water in any period of ten consecutive years reckoned in continuing progressive series beginning with October 1, 1945.

II. The State of Wyoming, its officers, attorneys, agents, and employees, be and they are hereby severally enjoined:

(a) From diverting or permitting the diversion of water for irrigation from the North Platte River and its tributaries, including water from hydrologically connected groundwater wells, upstream of Pathfinder Dam for the consumption in any period of ten consecutive years reckoned in continuing progressive series, of more than the largest amount of water consumed for irrigation from such sources in any ten consecutive year period between 1952 and 1999, inclusive. This injunction becomes effective the first full calendar year after the date of entry of this Modified Decree. The consumptive use of irrigation water in this area to be counted under this injunction shall include the following:

(1) Water consumed for irrigation purposes on lands irrigated with surface water diversions of natural flow;

(2) Water consumed for irrigation purposes on lands irrigated with water stored pursuant to paragraph II(e);

(3) Water consumed for irrigation purposes on lands irrigated by water from hydrologically connected groundwater wells;

(4) Water consumed for purposes other than irrigation under water rights transferred since October 8, 1945, from an irrigation use to another use;

The largest amount of water consumed for irrigation from such sources in any ten consecutive year period between 1952 and 1999, inclusive, has been determined by the parties pursuant to a methodology and procedures approved and adopted in the Final Settlement Stipulation to be 1,280,000 acre-feet. For the purpose of determining compliance with this injunction, the amount of water consumed for irrigation from such sources shall be determined by the same methodology and procedures. After ten years of administration, accounting, and reporting under this injunction, the methodology and the ten consecutive year limit will be reviewed by the North Platte Decree Committee pursuant to procedures approved and adopted in the Final Settlement Stipulation to determine if there is a better methodology for calculating the largest amount of water consumed for irrigation in such ten consecutive year period and for determining compliance. In making such calculation, any acreage historically reported by the Wyoming State Engineer as irrigated by direct flow surface water or stored water or as transfers, between 1952 and 1999, inclusive, and used in the existing methodology, shall not be changed. In addition, the other acreage used in the existing methodology shall not be changed unless the North Platte Decree Committee agrees that such change results in a more accurate determination of acres actually irrigated between 1952 and 1999, inclusive. In any new methodology, to determine compliance with the consumptive use limit, the acreage above Pathfinder Dam, when combined with the acreage between Pathfinder Dam and Guernsey Reservoir, cannot exceed the 226,000 acreage limitation pursuant to paragraph II(c). If Nebraska, Wyoming, and the

United States agree on a new methodology and a new limit, they shall notify the Court and this paragraph will be modified accordingly. As provided in paragraph XIII, absent agreement on a new methodology and a new limit, Nebraska, Wyoming, or the United States may seek recourse to the Court to resolve these issues.

(b) From diverting or permitting the diversion of water for irrigation from the North Platte River and its tributaries, including water from hydrologically connected groundwater wells, between Pathfinder Dam and Guernsey Reservoir for the consumption in any period of ten consecutive years reckoned in continuing progressive series, exclusive of the Kendrick Project, of more than the largest amount of water consumed for irrigation from such sources in any ten consecutive year period between 1952 and 1999, inclusive. This injunction becomes effective the first full calendar year after the entry of this Modified Decree. The consumptive use of irrigation water in this area to be counted under this injunction shall include the following:

(1) Water consumed for irrigation purposes on lands irrigated with surface water diversions of natural flow;

(2) Water consumed for irrigation purposes on lands irrigated with water stored in reservoirs that store water from the tributaries between Pathfinder Dam and Guernsey Reservoir;

(3) Water consumed for irrigation purposes on lands irrigated by water from hydrologically connected groundwater wells;

(4) Water consumed for purposes other than irrigation with water rights transferred since October 8, 1945, from an irrigation use to another use;

The largest amount of water consumed for irrigation from such sources in any ten consecutive year period between 1952 and 1999, inclusive, has been determined by the parties pursuant to a methodology and procedures approved and adopted in the Final Settlement Stipulation to be 890,000

acre-feet. For the purpose of determining compliance with this injunction, the amount of water consumed for irrigation from such sources shall be determined by the same methodology and procedures. After ten years of administration, accounting, and reporting under this injunction, the methodology and the ten consecutive year limit will be reviewed by the North Platte Decree Committee pursuant to procedures approved and adopted in the Final Settlement Stipulation to determine if there is a better methodology for calculating the largest amount of water consumed for irrigation in such ten consecutive year period and for determining compliance. In making such calculation, any acreage historically reported by the Wyoming State Engineer as irrigated by direct flow surface water or stored water or as transfers, between 1952 and 1999, inclusive, and used in the existing methodology, shall not be changed. In addition, the other acreage used in the existing methodology shall not be changed unless the North Platte Decree Committee agrees that such change results in a more accurate determination of acres actually irrigated between 1952 and 1999, inclusive. In any new methodology, to determine compliance with the consumptive use limit, the acreage above Pathfinder Dam, when combined with the acreage between Pathfinder Dam and Guernsey Reservoir, cannot exceed the 226,000 acreage limitation pursuant to paragraph II(c). If Nebraska, Wyoming, and the United States agree on a new methodology and a new limit, they shall notify the Court and this paragraph will be modified accordingly. As provided in paragraph XIII, absent agreement on a new methodology and a new limit, Nebraska, Wyoming, or the United States may seek recourse to the Court to resolve these issues.

(c) From diverting or permitting the diversion of water from the North Platte River and its tributaries, including water from hydrologically connected groundwater wells, upstream of Guernsey Reservoir for the intentional irrigation of more than a total of 226,000 acres of land in Wyoming

during any one irrigation season, exclusive of the Kendrick Project. The acres in this area to be counted under this injunction shall include the following, provided that an intentionally irrigated acre that receives water from more than one source shall be counted only once:

(1) Acres irrigated by surface water diversions of natural flow;

(2) Acres irrigated by water stored pursuant to paragraph II(e);

(3) Acres irrigated by water stored in reservoirs that store water from the tributaries between Pathfinder Dam and Guernsey Reservoir;

(4) Acres irrigated with water from hydrologically connected groundwater wells;

(5) The equivalent of the acres found by order of the Wyoming State Board of Control to have been historically irrigated and that formed the basis for the transfer of water rights where water rights on the North Platte River upstream of Guernsey Reservoir or the tributaries upstream of Pathfinder Dam are transferred after October 8, 1945, from an irrigation use to another use; provided, however, that the amount of acres counted for a given year may be reduced proportionately to the extent that the actual diversion and use of water under the transferred water right during that year are less than the total diversion and use allowed by the order approving such transfer;

(6) The equivalent of the acres found by order of the Wyoming State Board of Control to have been historically irrigated and that formed the basis for the transfer of water rights where water rights on the tributaries entering the North Platte River between Pathfinder Dam and Guernsey Reservoir are transferred after January 1, 2001, from an irrigation use to another use; provided, however, that the amount of acres counted for a given year may be reduced proportionately to the extent that the actual diversion and use of water under the transferred water right during that

year are less than the total diversion and use allowed by the order approving such transfer;

Ten years after the entry of this Modified Decree, the provision that enjoins Wyoming from intentionally irrigating more than 226,000 acres upstream of Guernsey Reservoir will be replaced with two injunctions, one that limits the number of acres that can be irrigated above Pathfinder Dam and one that limits the number of acres that can be irrigated between Pathfinder Dam and Guernsey Reservoir. Wyoming has the discretion to designate the irrigated acreage limitation above Pathfinder Dam and the irrigated acreage limitation between Pathfinder Dam and Guernsey Reservoir, so long as the total irrigated acreage limitation does not exceed 226,000 acres. After Wyoming makes such designation, Nebraska, Wyoming, and the United States will so notify the Court and the Modified Decree will be modified accordingly.

(d) From diverting or permitting the diversion of water from the Laramie River and its tributaries, including water from hydrologically connected groundwater wells, downstream of the Wheatland Irrigation District's Tunnel No. 2, exclusive of the area within the Wheatland Irrigation District, for the intentional irrigation of more than a total of 39,000 acres of land in Wyoming during any one irrigation season. The acres in this area to be counted under this injunction shall include the following, provided that an intentionally irrigated acre that receives water from more than one source shall be counted only once:

(1) Acres irrigated by surface water diversions of natural flow;

(2) Acres irrigated by stored irrigation water released from a reservoir;

(3) Acres irrigated with water from hydrologically connected groundwater wells;

(4) The equivalent of the acres found by order of the Wyoming State Board of Control to have been historically irri-

gated and that formed the basis for the transfer of water rights where water rights are transferred after January 1, 2001, from an irrigation use that is subject to the limitations of this paragraph II(d) to another use; provided, however, that the amount of acres counted for a given year may be reduced proportionately to the extent that the actual diversion and use of water under the transferred water right during that year are less than the total diversion and use allowed by the order approving such transfer;

(e) From storing or permitting the storage of more than a total amount of 18,000 acre-feet of water for irrigation purposes from the North Platte River and its tributaries above Pathfinder Reservoir between October 1 of any year and September 30 of the following year, exclusive of Seminoe Reservoir.

III. The State of Wyoming, its officers, attorneys, agents, and employees, be and they are hereby severally enjoined from storing or permitting the storage of water in Pathfinder, Guernsey, Seminoe, Alcova, and Glendo Reservoirs and the Inland Lakes otherwise than in accordance with the relative storage rights, as among themselves, of such reservoirs, which are hereby defined and fixed as follows:

First, Pathfinder Reservoir;

Second, Inland Lakes with the same priority date as Pathfinder Reservoir;

Third, Guernsey Reservoir;

Fourth, Seminoe Reservoir;

Fifth, Alcova Reservoir; and

Sixth, Glendo Reservoir;

Provided, however, that water accruing in priority to the storage right of a reservoir listed above, and water accruing to the Glendo Reservoir reregulating space pursuant to paragraph XVII(g), may be physically stored in, released from, or exchanged with another reservoir so long as the water is accounted in accordance with the foregoing rule of priority and only when such storage, release, or exchange

will not materially interfere with the administration of water for irrigation purposes according to the priority decreed for the French Canal and the State Line Canals. Further, in accordance with the opinion of this Court dated April 20, 1993 (507 U. S. 584), the United States has the right to divert 46,000 acre-feet of water during the nonirrigation season months of October, November, and April for storage in the Inland Lakes. Historically, pursuant to annual agreements entered in the discretion of the parties, such diversions have occurred at a rate not exceeding 910 cubic feet per second from gains accruing to the river downstream of Alcova Reservoir. This right shall be administered in accordance with procedures to be reviewed and adopted annually by the North Platte Decree Committee.

IV. The State of Wyoming, its officers, attorneys, agents, and employees, be and they are hereby severally enjoined from storing or permitting the storage of water in Pathfinder, Guernsey, Seminoe, Alcova, and Glendo Reservoirs, and from the diversion of natural flow water through the Casper Canal for the Kendrick Project between and including May 1 and September 30 of each year otherwise than in accordance with the rule of priority in relation to the appropriations of the Nebraska lands supplied by the French Canal and by the State Line Canals, which said Nebraska appropriations are hereby adjudged to be senior to said five reservoirs and said Casper Canal, and which said Nebraska appropriations are hereby identified and defined, and their diversion limitations in second feet and seasonal limitations in acre-feet fixed as follows:

| Lands | Canal | Limitation in Sec. Feet | Seasonal Limitation in Acre-Feet |
|---|---|---|---|
| Tract of 1,025 acres | French | 15 | 2,227 |
| Mitchell Irrigation District | Mitchell | 195 | 35,000 |
| Gering Irrigation District | Gering | 193 | 36,000 |
| Farmers Irrigation District | Tri-State | 748 | 183,050 |
| Ramshorn Irrigation District | Ramshorn | 14 | 3,000 |

This paragraph limits the extent to which these canals may stop the federal reservoirs from storing water and the Casper Canal from diverting natural flow water. It does not place any absolute ceilings or other restrictions on the quantities of water that these canals may actually divert. *Nebraska* v. *Wyoming*, 507 U. S., at 603; see also *Nebraska* v. *Wyoming*, 515 U. S., at 10.

V. The natural flow in the Guernsey Dam to Tri-State Dam section between and including May 1 and September 30 of each year, including the contribution of Spring Creek, be and the same hereby is apportioned between Wyoming and Nebraska on the basis of twenty-five per cent to Wyoming and seventy-five per cent to Nebraska, with the right granted Nebraska to designate from time to time the portion of its share which shall be delivered into the Interstate, Fort Laramie, French, and Mitchell Canals for use on the Nebraska lands served by these canals. The natural flow in a portion of certain tributaries and drains as defined in paragraph V(a) shall also be included in the natural flow apportioned by this paragraph. The State of Nebraska, its officers, attorneys, agents, and employees, and the State of Wyoming, its officers, attorneys, agents, and employees, are hereby enjoined and restrained from diversion or use contrary to this apportionment, provided that in the apportionment of water in this section the flow for each day, until ascertainable, shall be assumed to be the same as that of the preceding day, as shown by the measurements and computations for that day. Provided further that:

(a) Diversions under surface water rights for irrigation purposes from those parts of the tributaries and drains to the North Platte River that lie within the area bounded by Whalen Diversion Dam on the west, the Ft. Laramie Canal on the south, the Interstate Canal on the north, and the Wyoming-Nebraska state line on the east, excluding the drainage basins of the Laramie River and Horse Creek, shall be administered and accounted as diversions of natural flow

for the purposes of the foregoing percentage apportionment, unless the depletions to the North Platte River resulting from such diversions are replaced. The amount of such depletions, and the method for their replacement in the ordinary course of administration, shall be determined and implemented pursuant to procedures that have been approved and adopted in the Final Settlement Stipulation.

(b) Diversions for irrigation purposes from wells with water right priorities between October 8, 1945, and including December 31, 2000, located within the area bounded by Whalen Diversion Dam on the west, 300 feet south of the Ft. Laramie Canal on the south, one mile north of the Interstate Canal on the north, and the Wyoming-Nebraska state line on the east, shall be regulated as follows: To the extent the pumping of such wells results in depletions to the North Platte River between Whalen Diversion Dam and the state line or to the portions of tributaries described in paragraph V(a) between May 1 and September 30, such depletions shall be replaced or the pumping shall be regulated to prevent such depletions, unless such depletions occur when the natural flow in the Guernsey Dam to Tri-State Diversion Dam reach exceeds irrigation demands in that reach. The amount of such depletions, and the method for their replacement in the ordinary course of administration, shall be determined and implemented pursuant to procedures that have been approved and adopted in the Final Settlement Stipulation.

(c) Diversions for irrigation purposes from wells with water right priorities after December 31, 2000, located within the area bounded by Whalen Diversion Dam on the west, 300 feet south of the Ft. Laramie Canal on the south, one mile north of the Interstate Canal on the north, and the Wyoming-Nebraska state line on the east, shall be regulated or subject to depletion replacement pursuant to procedures that have been approved and adopted in the Final Settlement Stipulation.

(d) The river carriage and reservoir loss calculations established in the Decree of October 8, 1945, have been replaced with administrative procedures attached to the North Platte Decree Committee Charter. These procedures may be modified from time to time by the North Platte Decree Committee.

VI. This Modified Decree is intended to and does deal with and apportion only the natural flow of the North Platte River. Storage water shall not be affected by this Modified Decree, and the owners of rights therein shall be permitted to distribute the same in accordance with any lawful contracts which they may have entered into or may in the future enter into without interference because of this Modified Decree.

VII. Such additional gauging stations and measuring devices at or near the Wyoming-Nebraska state line, if any, as may be necessary for making any apportionment herein decreed, shall be constructed and maintained at the joint and equal expense of Wyoming and Nebraska to the extent that the costs thereof are not paid by others.

VIII. The State of Wyoming, its officers, attorneys, agents, and employees be and they are hereby severally enjoined from diverting or permitting the diversion of water from the North Platte River or its tributaries at or above Alcova Reservoir in lieu of or in exchange for return flow water from the Kendrick Project reaching the North Platte River below Alcova Reservoir.

IX. The State of Wyoming and the State of Colorado be and they are hereby each required to prepare and maintain complete and accurate records of the total area of land irrigated and the storage and exportation of the water of the North Platte River and its tributaries within those portions of their respective jurisdictions covered by the provisions of paragraphs I, II(c), II(d), and II(e). The State of Wyoming is also required to prepare and maintain complete and accurate records of the total consumption of irrigation water in

the portion of its jurisdiction covered by paragraphs II(a) and II(b). The record keeping and reporting required of the State of Wyoming by this paragraph shall be implemented in accordance with procedures that have been approved and adopted in the Final Settlement Stipulation. The records required by this paragraph shall be available for inspection at all reasonable times; provided, however, that such records shall not be required in reference to the water uses permitted by paragraphs X and XII(f).

X. This Modified Decree shall not affect or restrict the use or diversion of water from the North Platte River and its tributaries in Colorado or Wyoming for ordinary and usual domestic, municipal, and stock watering purposes and consumption.

XI. For the purposes of this Modified Decree:

(a) "Season" or "seasonal" refers to the irrigation season, May 1 to September 30, inclusive;

(b) The term "storage water" as applied to releases from reservoirs owned and operated by the United States is defined as any water which is released from reservoirs for use on lands under canals having storage contracts in addition to the water which is discharged through those reservoirs to meet natural flow uses permitted by this Modified Decree;

(c) "Natural flow water" shall be taken as referring to all water in the stream except storage water;

(d) Return flows from the Kendrick Project shall be deemed to be "natural flow water" when they have reached the North Platte River, subject to the same diversion and use as any other natural flow in the stream;

(e) "Hydrologically connected groundwater wells" are defined in procedures attached to the North Platte Decree Committee Charter as Exhibits 4, 6, and 12 approved and adopted in the Final Settlement Stipulation. The North Platte Decree Committee may modify such definition in accordance with the Final Settlement Stipulation.

XII. This Modified Decree shall not affect:

(a) The relative rights of water users within any one of the States who are parties to this suit except as may be otherwise specifically provided herein;

(b) Such claims as the United States has to storage water under Wyoming law nor will the Modified Decree in any way interfere with the ownership and operation by the United States of the various federal storage and power plants, works, and facilities;

(c) The use or disposition of any additional supply or supplies of water that may be imported into the basin of the North Platte River from the watershed of an entirely separate stream or the return flow from any such supply or supplies;

(d) The apportionment heretofore made by this Court between the States of Wyoming and Colorado of the waters of the Laramie River, a tributary of the North Platte River, down to and including the Wheatland Project. The waters of the Laramie River below the Wheatland Project are not apportioned by this Modified Decree. The only existing limitation in this Modified Decree on Wyoming's use of the Laramie River is provided in paragraph II(d);

(e) The apportionment made by the compact between the States of Nebraska and Colorado, apportioning the water of the South Platte River;

(f) Water diverted for de minimis uses, defined as:

(1) Ponds with capacities of twenty acre-feet or less for purposes other than irrigated agriculture;

(2) Wells with capacities less than or equal to twenty-five gallons per minute for a single project for purposes other than irrigated agriculture; and

(3) Miscellaneous uses that withdraw or divert less than fifty acre-feet per year for a single project other than stock watering, domestic or irrigated agriculture.

XIII. Any of the parties may apply at the foot of this Modified Decree for its amendment or for further relief.

Any dispute related to compliance or administration shall be submitted to and addressed by the North Platte Decree Committee before a party may seek leave of the Court to bring such dispute before the Court. The Court retains jurisdiction of this suit for the purpose of any order, direction, or modification of the decree, or any supplementary decree, that may at any time be deemed proper in relation to the subject matter in controversy. Further, the Court retains jurisdiction, upon proper showing, to adjudicate all matters for which authority or responsibility is granted to the North Platte Decree Committee by this Modified Decree or the Final Settlement Stipulation. Matters with reference to which further relief may hereafter be sought shall include, but shall not be limited to, the following:

(a) The question of the applicability and effect of the Act of August 9, 1937 (50 Stat. 564, 595–596), upon the rights of Colorado and its water users;

(b) The question of the effect upon the rights of upstream areas of the construction or threatened construction in downstream areas of any projects not now existing or recognized in this Modified Decree;

(c) The question of the effect of the construction or threatened construction of storage capacity not now existing on tributaries entering the North Platte River between Pathfinder Reservoir and Guernsey Reservoir;

(d) The question of the right to divert at or above the headgate of the Casper Canal any water in lieu of, or in exchange for, any water developed by artificial drainage to the river of sump areas on the Kendrick Project;

(e) Any question relating to the joint operation of Pathfinder, Guernsey, Seminoe, Alcova, and Glendo Reservoirs whenever changed conditions make such joint operation possible;

(f) Any change in conditions making modification of the Modified Decree or the granting of further relief necessary or appropriate;

(g) Failure of the North Platte Decree Committee, or the parties to the North Platte Decree Committee, to act upon, resolve or agree on a matter that has been submitted to the North Platte Decree Committee.

XIV. The costs in the original cause were apportioned and paid pursuant to previous order of this Court. The costs in the present cause and the payment of the fees and expenses of the Special Master have been apportioned and paid according to previous orders of this Court with which the parties agree and the Court hereby confirms.

XV. The clerk of this Court shall transmit to the Governors and Attorneys General of the States of Colorado, Wyoming, and Nebraska, the Solicitor General of the United States of America, and Basin Electric Power Cooperative, copies of this Modified Decree duly authenticated under the seal of this Court.

XVI. Whatever claims or defenses the parties or any of them may have in respect to the application, interpretation, or construction of the Act of August 9, 1937 (50 Stat. 564, 595–596), shall be determined without prejudice to any party arising because of any development of the Kendrick Project occurring subsequent to October 1, 1951.

XVII. The following provisions are effective for the operation of Glendo Dam and Reservoir:

(a) The operation of the Glendo Project shall not impose any demand on areas at or above Seminoe Reservoir which will prejudice any rights that the States of Colorado or Wyoming might have to secure a modification of the Modified Decree permitting an expansion of water uses in the natural basin of the North Platte River in Colorado or above Seminoe Reservoir in Wyoming.

(b) The operation of Glendo Reservoir shall not affect the regime of the natural flow of the North Platte River except that not more than 40,000 acre-feet of the natural flow of the North Platte River and its tributaries which cannot be stored in upstream reservoirs under the provisions of this

Modified Decree may be stored in Glendo Reservoir during any water year for disposition by the United States under contracts, in addition to evaporation losses on such storage, and further, the amount of water that may be held in storage at any one time for disposition by the United States under contracts, including carryover storage, shall never exceed 100,000 acre-feet. Such storage water shall be disposed of in accordance with contracts executed or to be hereafter executed, in compliance with federal law, and may be used for any beneficial purpose in Nebraska within the Platte River basin to the extent of 25,000 acre-feet annually and for any beneficial purpose in Wyoming within the Platte River basin to the extent of 15,000 acre-feet annually. The above limitation on the amount of storage of natural flow does not apply: (1) to flood water which may be temporarily stored in any capacity allocated for flood control in Glendo Reservoir; (2) to water originally stored in Pathfinder Reservoir which may be temporarily re-stored in Glendo Reservoir after its release from Pathfinder and before its delivery pursuant to contract; (3) to Inland Lakes account water temporarily stored in accordance with this Court's Order of April 20, 1993; (4) to water which may be impounded behind Glendo Dam, as provided in the Bureau of Reclamation Definite Plan Report for the Glendo Unit, Wyoming, dated December 1952, as revised through December 1959 (Glendo Definite Plan Report) for the purpose of creating a head for the development of water power; or (5) to water in Glendo Reservoir used for the purposes described in paragraph XVII(g).

(c) Each State may substitute or supplement quantities of storage water obtained under other contractual arrangements with Glendo Reservoir storage supplies. Subject to contractual arrangements with the United States Bureau of Reclamation, including any required compliance with the Endangered Species Act, 16 U. S. C. § 1531 *et seq.*, and the National Environmental Policy Act, 42 U. S. C. § 4321 *et seq.*, each State shall also enjoy unrestricted use of its respective

storage allocation in Glendo Reservoir, so long as the use is below Glendo Reservoir and within the Platte River basin.

(d) Glendo Reservoir storage water may be consumptively used in Wyoming by exchange or other means, upstream of Glendo Reservoir under the terms of this paragraph. For every two acre-feet of Glendo storage water diverted upstream of Glendo Reservoir pursuant to such an exchange, all of which may be fully consumed, an additional acre-foot of Wyoming's Glendo storage allocation shall be contracted at the same time for storage and release from Glendo Reservoir and passed through Guernsey Reservoir to the North Platte River. Except as may be modified in accordance with paragraph XVII(e), or by agreement of the parties, such additional water shall be released from the reservoir at the same time and at a rate proportionate to the diversion of the water contracted for use upstream from Glendo Reservoir during the irrigation season. During the nonirrigation season, due to operational constraints of the outlets at Guernsey Reservoir, such additional water will be held in the Glendo account and released prior to the first of May as may be operationally practical. Except as provided in paragraph XVII(e), once released, such additional water shall be considered natural flow water for purposes of the 75/25 apportionment specified in paragraph V.

(e) If the valid exercise or enforcement of federal law or authority requires Wyoming or a water user within Wyoming to cause the release of a portion of Wyoming's Glendo allocation for environmental purposes downstream of Glendo Reservoir, the additional water contracted and released under paragraph XVII(d) may be dedicated to and used for that purpose. Any water released pursuant to such requirement shall not be considered natural flow but shall be administered and protected as storage water in accordance with state law within both Wyoming and Nebraska until used for its intended purposes.

(f) Storage water in Glendo Reservoir from either State's allocation may be used for fish and wildlife purposes downstream of Glendo Reservoir under contractual arrangements with the United States Bureau of Reclamation, subject to approval of Wyoming for contracts for water from Wyoming's storage allocation and subject to approval of Nebraska for contracts for water from Nebraska's storage allocation. Any water released pursuant to such agreement shall not be considered natural flow but shall be administered and protected as storage water in accordance with state law within both Wyoming and Nebraska until used for its intended purposes.

(g) The United States Bureau of Reclamation has the discretion to hold water in Glendo Reservoir in excess of the limitations stated in paragraph XVII(b) in accordance with the operation of the reregulation space in Glendo Reservoir under Permit No. 5998 Res. and Certificate of Construction of Reservoir, as clarified by Order of the Wyoming State Board of Control dated November 29, 2000. Such water may be used, subject to federal law, for the following purposes:

(1) to replace water that passed the Wyoming-Nebraska state line in excess of the amount ordered by canals with storage contracts below the Wyoming-Nebraska state line as the unintended result of physical limitations on the ability to control water deliveries;

(2) to replace evaporation from the storage ownership accounts of Pathfinder Reservoir, Guernsey Reservoir, Seminoe Reservoir, Alcova Reservoir, and Glendo Reservoir; and

(3) to supplement the natural flow that is available for apportionment pursuant to paragraph V.

XVIII. The creation of the North Platte Decree Committee is hereby approved and ratified. Procedures that have been approved and adopted in the Final Settlement Stipulation may be modified from time to time by the North

Platte Decree Committee if the modifications are consistent with the Modified Decree.   In the event of a conflict between any procedure, the Final Settlement Stipulation and the Modified Decree, the provisions of this Modified Decree shall control.